U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

OCT 0 6 2008

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

---

ALZA E. HANNAWACKER

versus

THE KANSAS CITY SOUTHERN
RAILWAY COMPANY

CIVIL NO. 07-0020
JUDGE TOM STAGG

---

## MEMORANDUM RULING

Before the court is The Kansas City Southern Railway Company's ("KCS")

motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil

Procedure. See Record Document 41. Based on the following, KCS's motion for

summary judgment is **GRANTED**.

## I. BACKGROUND

Alza E. Hannawacker ("Hannawacker") filed suit in federal court for

violations of Title VII of the Civil Rights Act, as amended, and the Americans With

Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101, et seq. In her

complaint, Hannawacker seeks "declaratory and injunctive relief to restrain

Defendant, [KCS], from maintaining practices, policies, customs and usages" which

discriminate against her because of her gender, her disability, and in retaliation for

1

filing a charge with the Equal Employment Opportunity Commission ("EEOC"). Record Document 1 at 1 and 2.

In May of 1998, Hannawacker began her employment with KCS as a conductor/breakman. See id. at 3. On March 11, 2002, Hannawacker was convicted of felony driving while intoxicated ("DWI"). See id. at 4. According to KCS's General Code of Operating Rules ("GCOR"), any employee convicted of a felony must notify his or her supervisor of that fact no later than the first business day immediately following the day the employee receives notification of the conviction.[1] See Record Document 41, Ex. 2. Due to her injuries and subsequent jail sentence, Hannawacker did not return to work until April 15, 2002. See Record Document 43 at 1. Only then did she inform her supervisor of "her situation," that she would be on probation, have an interlock device put in her car, and be subject to random drug tests. See Record Document 43, Ex. 1 at 63. Hannawacker did not expressly state that she had been "convicted of a felony." See id. at 69.

In late April of 2002, Hannawacker began remote control operation ("RCO") training in Beaumont, Texas. See Record Document 41, Ex. A at Deposition Ex. 1. During this process, KCS conducted a search of Hannawacker's driving record, which revealed evidence of her recent felony conviction. See id. On May 2, 2002,

---

[1] Although Hannawacker denies that the GCOR contained this statement in 2002, she acknowledges that she was familiar with the rule and that it was published in other KCS employee literature.

KCS removed Hannawacker from service pending a formal investigation to determine whether she failed to report the felony conviction. See id. On May 9, 2002, KCS determined that Hannawacker failed to report her felony conviction in violation of GCOR 1.6.2.[2] On May 14, 2002, KCS dismissed Hannawacker from service subject to future reinstatement. See id.

After unsuccessfully appealing her termination through internal channels, Hannawacker appealed the results of her formal hearing to the Public Law Board. On May 13, 2003, the Public Law Board found Hannawacker's dismissal to be "harsh and unreasonable." Record Document 43, Ex. 6 at 4. The Board found "a more appropriate penalty to be the time that Claimant was held out of service to the date of this Board's award, without payment for time lost." Id. The Board then conditionally reinstated Hannawacker subject to an agreement with KCS that she participate in an employee assistance program ("EAP") and a period of random toxicological testing. See id.

On May 14, 2003, KCS sent Hannawacker a proposed agreement which detailed the terms and conditions of her return to service. This agreement, signed by Hannawacker on June 9, 2003, mandated that Hannawacker establish an After

---

[2]GCOR 1.6.2, entitled *Notification of Felony Convictions*, states "The conduct of any employee leading to conviction of any felony is prohibited. Any employee convicted of a felony must notify his or her supervisor of that fact not later than the end of the first business day immediately following the day the employee receives notice of the conviction." See Record Document 43, Ex. 2.

Care program with her EAP Counselor prior to her return to service and that she supply KCS with proof of compliance. The agreement further provided that "[a]ny and all claims in connection with this case, initiated or not, are withdrawn and are further barred." Record Document 43, Ex. 17.

On July 29, 2003, Hannawacker began a series of evaluations and interviews with Dr. Mark Vigen ("Dr. Vigen"), the EAP approved psychologist. After an initial interview, Dr. Vigen stated: "Due to concerns about her emotional stability, her substance abuse history, and her overall functioning, [Hannawacker] is not fit to perform the duties of a safety sensitive position."[3] After four interviews and a testing session, Dr. Vigen stated in his final report: "It is my opinion now that Ms. Hannawacker is competent to return to certification, training, and duty as a conductor. I would recommend, however, that she be returned to her former duties and not to remote-control status." Record Document 43, Ex. 9 at 2. On November 20, 2003, believing that she had satisfied the requirements of the Public Law Board, Hannawacker requested reinstatement from KCS, but the request was denied. See Record Document 1 at 6.

On August 15, 2004, Hannawacker completed an initial questionnaire with the EEOC; she filed a formal charge on September 4, 2004. See Record Document 41,

---

[3]This statement was in a letter from EAP counselor Clayton O'Conner to Phil Barzee, KCS's Human Resources manager.

Ex. A at Deposition Exs. 10 and 11. In her EEOC charge, Hannawacker alleged

that she was denied reinstatement because of her gender and her disability. See id.

at 11. After conducting its investigation, the EEOC determined that the evidence

established a continuing violation of Title VII and the ADA. See Record Document

43, Ex. 14. After informal conciliation was unsuccessful, the EEOC issued

Hannawacker a right to sue letter on October 11, 2006. See Record Document 1 at

3. This litigation followed.

## II. ANALYSIS

### A. Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil

Procedure "if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of

law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

"Rule 56(c) mandates the entry of summary judgment, after adequate time for

discovery and upon motion, against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311,

315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine issue of

material fact, "the nonmovant must go beyond the pleadings and designate specific

facts showing that there is a genuine issue for trial." <u>Gen. Universal Sys., Inc. v. Lee</u>, 379 F.3d 131, 141 (5th Cir. 2004).

All facts and inferences are viewed in the light most favorable to the non-moving party, and all reasonable doubts are resolved in that party's favor. <u>See</u> <u>Puckett v. Rufenacht, Bromagen & Hertz, Inc.</u>, 903 F.2d 1014, 1016 (5th Cir. 1990). If factual issues or conflicting inferences exist, the court is not to resolve them; rather, summary judgment must be denied. <u>See</u> <u>id.</u>

## B. Discussion.

### 1. Railway Labor Act Preclusion.

KCS's first argument to this court in support of its motion for summary judgment is that Hannawacker's claims are precluded by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 <u>et seq.</u> The RLA provides a mandatory arbitral mechanism to handle disputes "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 153(i); <u>Hawaiian Airlines, Inc. v. Norris</u>, 512 U.S. 246, 248, 114 S.Ct. 2239, 2241 (1994). In order to promote stability in labor-management relations and to provide a comprehensive framework for resolving disputes, the RLA divides such disputes into two classes: major disputes and minor disputes. <u>See</u> <u>Norris</u>, 512 U.S. at 252, 114 S. Ct. at 2243-44. If a dispute is classified as "minor," it is subject to mandatory arbitration. <u>See</u> <u>id.</u> at 253, 114 S. Ct. at 2244.

While major disputes involve the formation of a collective bargaining agreement ("CBA"), minor disputes "grow out of grievances or out of the interpretation or application" of such CBA. 45 U.S.C. § 151(a); Norris, 512 U.S. at 252, 114 S. Ct. at 2244. The distinguishing feature of a minor dispute "is that the dispute may be conclusively resolved by interpreting the existing [collective bargaining] agreement." Carmona v. Southwest Airlines Co., 536 F.3d 344, 348 (5th Cir. 2008). For a claim to be "conclusively resolved" by interpreting the CBA, it must not involve rights that exist independently of the CBA. Carmona, 536 F.3d at 348; Norris, 512 U.S. at 252,53, 114 S. Ct. at 2243-44. Therefore, if Hannawacker's claims can be resolved through an interpretation of the CBA, her suit would constitute a "minor dispute" under the RLA, and must be resolved only through the RLA mechanism.

The Fifth Circuit Court of Appeals recently addressed whether a plaintiff's Title VII and ADA claims were precluded from judicial review by the RLA. See Carmona, 536 F.3d 344. In Carmona, Southwest Airlines fired the plaintiff after he allegedly violating the CBA's attendance policy. After unsuccessfully appealing his termination through the grievance procedures under the CBA and RLA, the plaintiff filed a charge of discrimination with the EEOC, which also dismissed his claims. The plaintiff then filed suit in the Western District of Texas under Title VII and the ADA. The district court granted the defendant's motion for summary judgment, concluding that the plaintiff's claims were precluded by the RLA. The

Fifth Circuit reversed, holding that "because Carmona's allegations of Title VII sex discrimination and ADA disability discrimination do not require interpretation of the CBA, they do not constitute a minor dispute precluded by the RLA." Carmona, 536 F.3d at 351. The court noted that to have subject matter jurisdiction over such a suit, the CBA does not have to be irrelevant and that either party may use such an agreement to support its claims. See id. at 349. Further, the plaintiff alleged that the CBA procedures were applied in a discriminatory manner, not that they were fundamentally discriminatory. See id. Accordingly, the Fifth Circuit determined that the plaintiff's claims did not constitute a minor dispute and were not precluded by the RLA. See id. at 351.

Here, Hannawacker's claims are very similar to those asserted by Carmona, insofar as she alleged the CBA procedures were applied to her in a discriminatory manner; she is not claiming the CBA procedures are fundamentally discriminatory. While the CBA is likely relevant to Hannawacker's claims, an interpretation of the CBA would not conclusively resolve the dispute. As no interpretation of the CBA is required, Hannawacker's claims do not constitute a "minor dispute." Accordingly, Hannawacker's claims are not precluded from review by the RLA. See Carmona, 536 F.3d 344.

## 2. EEOC Statutory Bar.

KCS's second argument to this court in support of its motion for summary

8

judgment is that Hannawacker's claim is statutorily barred by 42 U.S.C. §2000e-5(e)(1). This statute requires a party to file an EEOC charge of discrimination within 300 days "after the alleged unlawful discrimination occurred." E.E.O.C. v. WC&M Enterprises, Inc., 496 F.3d 393, 398 (5th Cir. 2007). As evidenced by such a short deadline, Congress intended to encourage the prompt processing of all charges of employment discrimination. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109, 122 S. Ct. 2061, 2070 (2002).

According to the Supreme Court, the statutory term "employment practice" generally refers to a discrete act or single occurrence that takes at a particular point in time. Ledbetter v. Goodyear Tire & Rubber Co., Inc., ___ U.S. ___, 127 S. Ct. 2162, 2169 (2007). Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. See id. "Each incident of discrimination and retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Morgan, 536 U.S. at 114, 122 S. Ct. at 2073. The operative date from which the limitations period begins to run is the date of notice of adverse action, rather than the date the adverse action takes place. See Clark v. Resistoflex Co., 854 F.2d 762, 765 (5th Cir. 1988).

Here, Hannawacker alleges that KCS discriminated against her when she was originally fired. See Record Document 1 at 3. Hannawacker was pulled from a training session on April 29, 2002, was removed from service on May 2, 2002, and

was fired on May 13, 2002. See id. at 4. At the latest, Hannawacker had 300 days from May 13, 2002 to file an EEOC charge regarding her termination. See 42 U.S.C. §2000e-5(e)(1). As Hannawacker did not file a such a charge until September 4, 2004 (more than 800 days later), she is time-barred from bringing any claim that stems from this discrete act of termination. See id.

Hannawacker also alleges that KCS discriminated against her based on its refusal to reinstate her. See Record Document at 3. She argues that "the ultimate employment action is ongoing or continuing in nature because KCS refuses to reinstate her...." Record Document 43 at 11. The court fails to find, nor has Hannawacker provided, legal support for the proposition that an employee can be subject to an ongoing "unlawful employment practice" due to an employer's refusal to reinstate the employee. If the court were to adopt such a position, it would render 42 U.S.C. §2000e-5(e)(1) useless. Hannawacker would be permitted to file her EEOC charge at any point in the future, so long as KCS refuses to reinstate her.

Despite this finding, Hannawacker implicitly alleges a concrete unlawful employment practice in her "failure to reinstate" claim. According to her complaint, Hannawacker satisfied the requirements of the Public Law Board Agreement on or about November 2003. See Record Document 1 at 5. She further alleged that she requested and was denied reinstatement from KCS on or about November 18, 2003. See id. The EEOC determined that "evidence obtained during

the investigation does establish continuing violations of Title VII and the ADA." Record Document 43, Ex. 14. Considering the facts in the light most favorable to the nonmoving party, KCS committed an unlawful employment practice on November 18, 2003 by refusing to reinstate Hannawacker. As Hannawacker timely filed her EEOC charge on September 4, 2004, she is not time-barred from bringing claims that stem from KCS's refusal to reinstate her. See 42 U.S.C. §2000e-5(e)(1).

### 3. Scope Of The EEOC Charge.

KCS's third argument to this court is support of its motion for summary judgment is that Hannawacker's EEOC charge only allows this court to consider her "failure to reinstate" claim. See Record Document 43 at 6. In support of its argument, KCS correctly states that the scope of inquiry for a court in a Title VII action is limited to the EEOC's investigation that can reasonably be expected to grow out of the charge of discrimination. See Young v. City of Houston, Tex., 906 F.2d 177, 179 (5th Cir. 1990). To reach this standard, the Fifth Circuit balanced two conflicting Title VII policies. See Pacheco v. Mineta, 448 F.3d 783, 788 (5th Cir. 2006). First, the scope of an EEOC charge should be liberally construed as the provisions of Title VII were not designed for the sophisticated. See id. Second, a "primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." Id. at 789. Courts must review a Title VII

11

claim not only "by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" Id. In other words, courts must look slightly beyond the four corners of an EEOC charge to find its true substance. See id.

Here, Hannawacker asserted in her EEOC charge that KCS failed to reinstate her based on her gender and her disability. See Record Document 41, Ex. A at Deposition Ex. 12. Consistent with these allegations, Hannawacker checked both the sex and disability boxes on the EEOC charge. See id. When the EEOC analyzed Hannawacker's claims, it noted: "The Charging Party alleges that she was denied reinstatement because of her gender, female, and her disability." Record Document 43, Ex. 14. Accordingly, this court's inquiry is limited to the facts and circumstances surrounding KCS's alleged failure to reinstate Hannawacker based on her gender and disability. See Young, 906 F.2d 179.

Despite the limited scope of her EEOC charge, Hannawacker's complaint included claims arising from her termination,[4] the hostile work environment,[5] and

---

[4]Even if Hannawacker's termination claims were included in the EEOC charge, they were barred by 42 U.S.C. §2000e-5(e)(1) as discussed above.

[5]Even if Hannawackers hostile work environment claims were included in the EEOC charge, they would nevertheless be barred as they occurred outside the statutory period. KCS's failure to reinstate Hannawacker should not be considered an act contributing to a hostile work environment, and will not revive prior acts that may have contributed to a hostile work environment. See Morgan, 536 U.S. at 112, 122 S. Ct. at 2071.

in retaliation for filing an EEOC charge.[6] See Record Document 1 at 7-10. As it would be unreasonable to expect the EEOC to investigate these claims in light of Hannawacker's narrow EEOC charge, they are not within the scope of this court's review and must be dismissed. See Givs v. City of Eunice, 512 F.Supp. 2d. 522, 537 (W.D.La. 2007).

**4. Claims Under Title VII And The ADA.**

KCS's fourth argument to this court in support of its motion for summary judgment is that Hannawacker has not presented sufficient evidence to show that KCS's failure to reinstate her is a result of gender or disability discrimination. See Record Document 41 at 7. Hannawacker first argues that she has direct evidence of discrimination, specifically a statement by Mr. Robertson, KCS's director of labor and administration, that "KCS was not returning her to service because she was a liability." Record Document 43 at 15. The Fifth Circuit has defined direct evidence as evidence which, "if believed, proves the fact without inference or presumption." Jones v. Robinson Prop. Group, L.P., 427 F.3d 987, 992 (5th Cir. 2005). Any statement which shows on its face that an improper criterion served as a basis for the adverse employment action is direct evidence of discrimination. See id. at 993. Here, the court would have to infer or presume the grounds upon which

---

[6]Hannawacker concedes that her retaliation claims should be dismissed. See Record Document 43 at 25.

Mr. Robertson considered Hannawacker a liability. From the face of the statement, it is unclear whether or not Mr. Robertson ever considered her gender or disability as a basis for KCS's refusal to reinstate her. As Hannawacker has not provided direct evidence of discrimination, her claims will be analyzed under the McDonnell Douglas burden-shifting framework. See Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 896 (5th Cir. 2002).

Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. See Raytheon Co. v. Hernandez, 540 U.S. 44, 49, 125 S. Ct. 513, 517 (2003). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. See id. If the defendant meets its burden, the presumption of intentional discrimination disappears and the burden shifts back to the plaintiff to produce evidence that the defendant's articulated reason is merely a pretext for discrimination. See id.

### a. Gender Discrimination.

To meet her initial burden of gender discrimination, Hannawacker must establish that she: (1) is a member of a protected class, (2) was qualified for the position held, (3) was subject to an adverse employment action, and (4) treated differently from others similarly situated. See Abarca v. Metro. Transit Auth., 404 F.3d 938, 941 (5th Cir. 2005). Here, KCS argues that Hannawacker has failed to

establish the second, third, and fourth elements of her prima facie case. See Record Document 41 at 8. Assuming without finding that Hannawacker has established the second and third elements of her prima facie case, the fourth element requires further analysis.

The Fifth Circuit holds that in disparate treatment cases involving separate incidents of misconduct, employees are similarly situated only if the circumstances and misconduct of the comparator employee are "nearly identical" to that of the plaintiff. Berquist v. Wash. Mut. Bank, 500 F.3d 344, 353 (5th Cir. 2007). To establish this fourth element, Hannawacker relies on her deposition testimony in which she stated: "Robert Dawson had numerous DUIs and was sentenced to 75 days in jail." Record Document 43 at 23. She further testified that KCS "allowed [Mr. Dawson] to take his vacation time to serve his jail time and never was required to undergo EAP counseling." Id. While these facts may establish that the circumstances and misconduct of Hannawacker and Robert Dawson were "nearly identical" during the period of Hannawacker's termination, the same may not be said of her "failure to reinstate" period. There is no evidence in the record of other employees who were seeking reinstatement, who were participating in an EAP program, or who had been medically released subject to non-RCO work. Further, there is no indication that Robert Dawson failed to notify KCS of his felony conviction. As the record is void of any evidence that the circumstances and

15

misconduct of another employee were "nearly identical" to that of Hannawacker regarding her "failure to reinstate" claim, this court finds that Hannawacker has failed to establish the fourth element of a prima facie case of gender discrimination.

### b. Disability Discrimination.

To meet her initial burden of disability discrimination under the ADA, Hannawacker must show that: (1) she has a disability, (2) she is a qualified individual for the job in question, and (3) an adverse employment decision was made because of her disability. See Talk v. Delta Airlines, Inc., 165 F.3d 1021, 1024 (5th Cir. 1999). The threshold issue is a showing that Hannawacker suffers from a disability protected by the ADA. See id.

According to the ADA, a disability is (1) a physical or mental impairment that substantially limits one or more major life activities of such an individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. See 42 U.S.C. §12102(2). Hannawacker seems to rely on the third definition of disability in that KCS regards her as disabled. See Record Document 43 at 15. In support of this allegation, Hannawacker testified in her deposition that KCS, through its director of labor and administration Mr. Robertson, told her that she was a liability based upon Dr. Vigen's report. See id.

A plaintiff is regarded as disabled if she "(1) has an impairment that is not substantially limiting but which the employer perceives as substantially limiting, (2)

16

has an impairment that is substantially limiting only because of the attitudes of others, or (3) has no impairment but is perceived by the employer as having a substantially limiting impairment." E.E.O.C. v E.I. Du Pont de Nemours & Co., 480 F.3d 724, 729 (5th Cir. 2007). Hannawacker's burden under the ADA is not satisfied merely by showing that KCS regarded her as disabled. See Zenor v. El Paso Healthcare Sys., Ltd., 176 F.3d 847, 859 (5th Cir. 1999). She must also show that KCS regarded her disability as substantially limiting one of her major life activities. See id.

Here, Hannawacker alleges that KCS regarded her disability as substantially limiting in the major life activity of concentrating and cognitive functioning based upon her history of alcoholism and past treatment for depression with medications. See Record Document 43 at 19. Even if thinking and concentrating are major life activities, Hannawacker has not produced evidence that her alcoholism and depression substantially limit these activities.[7] Similarly, Hannawacker has not produced evidence that raises an issue of fact as to whether KCS perceived her as having a disability that substantially limited her concentrating and cognitive functioning. While KCS was likely aware of her medical history, Hannawacker offers no evidence to support a connection between KCS's knowledge and its failure

--------

[7]There is no indication that thinking and concentrating are major life activities under Fifth Circuit precedent. See Parker v. Am. Airlines, Inc., No. 4:06-CV-694-Y, 2008 WL 2811320, at *8 (N.D.Tex. July 22, 2008).

to reinstate her. As the record is void of any evidence that KCS regarded Hannawacker as disabled under the ADA, Hannawacker has failed to establish the first element of her prima facie case of disability discrimination.

### c. Prima Facie Case Established.

Assuming that Hannawacker successfully established a prima facie case of discrimination, the burden would then shift to KCS to articulate a legitimate, nondiscriminatory reason for the adverse action. See Raytheon Co. v. Hernandez, 540 U.S. 44, 49, 124 S. Ct. 513, 517 (2003). In this second phase of the McDonnell Douglas burden-shifting analysis, the defendant's burden is satisfied by producing evidence, which, "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002). The defendant "need not persuade the court that it was actually motivated by the proffered reasons." Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995). After the defendant articulates its nondiscriminatory reason for its action, the mandatory inference of discrimination created by the plaintiff's prima facie case ceases to exist. See Raytheon, 540 U.S. at 49, 125 S. Ct. at 517.

Here, KCS stated that it did not rehire Hannawacker because she did not provide the company with a full release to return to her position. See Record Document 41 at 17. Taken as true, this statement permits the conclusion that there

was a non-discriminatory reason for KCS's refusal to reinstate Hannawacker. Accordingly, the mandatory presumption of intentional discrimination disappeared. Again assuming that Hannawacker met her initial burdern, she could now establish discrimination only by offering evidence demonstrating that KCS's explanation is pretextual. See Raytheon, 540 U.S. at 49, 125 S. Ct. at 517.

In this third phase of the McDonnell Douglas burden-shifting analysis, a plaintiff may establish pretext either through evidence of disparate treatment or by showing the proffered explanation is false or unworthy of credence. See Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003). An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action. See id. "Whether summary judgment is appropriate depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered.'" Price, 283 F.3d at 720.

Here, Hannawacker did not produce substantial evidence of disparate treatment or pretext. Evidence is substantial if it is "of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." Laxton, 333 F.3d at 579. Hannawacker merely alleged that KCS told her that she was not returning to work because she was a liability. See Record Document 43 at 15. As this simple assertion is not substantial evidence of

19

pretext, Hannawacker has not rebutted KCS's non-discriminatory reason.

As discussed above, Hannawacker failed to establish prima facie cases of gender and disability discrimination under Title VII and the ADA. This fact alone warrants the granting of KCS's motion for summary judgment. Assuming however that Hannawacker did establish prima facie cases of discrimination, KCS articulated a nondiscriminatory reason for its actions. Hannawacker's inability to rebut KCS's articulated reason for its refusal to rehire her again warrants the granting of KCS's motion for summary judgment.

### 5. Reasonable Accommodation.

KCS's fifth argument to this court in support of its motion for summary judgment is that Hannawacker failed to request a reasonable accommodation under the ADA. See Record Document 41 at 22. According to her complaint, Hannawacker's numerous requests to be reinstated are requests for accommodation under the ADA. See Record Document 1 at 8. The ADA prohibits an employer from failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [an employer] can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. §12112(b)(5)(A). Here, Hannawacker states that KCS's refusal to make reasonable accommodations constitutes discrimination against her in violation of 42 U.S.C. §12112(b)(5)(A). See Record

Document 1 at 9.

KCS first argues that Hannawacker is not a "qualified individual with a disability" as defined by the ADA. <u>See</u> Record Document 43 at 22. To meet this definition, Hannawacker must be an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. <u>See</u> 42 U.S.C. § 12111(8). As previously mentioned, the ADA defines the term "disability" as either a physical or mental impairment that substantially limits one or more of the major life activities of such individual, a record of such an impairment, or being regarded as having such an impairment. <u>See</u> 42 U.S.C. § 12102(2). As discussed supra, Hannawacker is not "disabled" within the meaning of the ADA. Hannawacker is not a "qualified individual with a disability" under the ADA, thus KCS did not violate 42 U.S.C. §12112(b)(5)(A), and Hannawacker's "failure to accommodate" claim must be dismissed.

Even if Hannawacker established that she was a "qualified individual with a disability," her failure to request a cognizable, reasonable accommodation is equally fatal to her claim. <u>See</u> <u>Burch v. Coca-Cola Co.</u>, 119 F.3d 305, 318 (5th Cir. 1997). An employee who requests only the opportunity to return to an unmodified, previously-held position fails to state a cognizable "failure to accommodate" claim. <u>See</u> <u>id.</u> at 314. Hannawacker should not be able to characterize her "failure to

21

reinstate" claim as a "request of accommodation" in order to take advantage of the objective inquiry of section 12112(b)(5). See id. Accordingly, Hannawacker's "failure to accommodate" claim should be dismissed.

## III. CONCLUSION

Based on the foregoing analysis, Hannawacker failed to timely file an EEOC charge regarding her "termination," failed to exhaust her administrative remedies regarding her "hostile work environment" claim, failed to establish prima facie cases of gender or disability discrimination under Title VII and the ADA, and failed to establish she was a "qualified individual with a disability" regarding her "failure to accommodate" claim. Accordingly;

**IT IS ORDERED** that KCS's Motion for Summary Judgment is **GRANTED.**

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 6ᵗʰ day of October, 2008.



JUDGE TOM STAGG